The STATE of Ohio, Appellee,

v.

SELF, Appellant.

[Cite as *State v. Self* (1996), 112 Ohio App.3d 688.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA95–12–031.

Decided July 22, 1996.

*Fred J. Beery,* for appellee.

*C. Jay Schwart,* for appellant.

---

WALSH, Presiding Judge.

Defendant-appellant, Willard L. Self, appeals his conviction for vehicular homicide. Appellant's conviction was the result of an automobile accident at the intersection of State Route 729 and State Route 72 in Clinton County (the "intersection").

On June 8, 1995, appellant was traveling northeast on State Route 729 towards the intersection. Stop signs mark the intersection for those traveling on State Route 729. There is, however, no traffic control device for vehicles approaching the intersection on State Route 72; motorists traveling through the intersection on State Route 72 have the right of way.

Although he had a stop sign, appellant did not stop at the intersection but drove straight into it at a speed of at least thirty-nine miles per hour, colliding with the left rear side of a vehicle driven by Ernest Osborne, who was traveling northwest on State Route 72. Osborne's car spun out of control and rolled over, fatally injuring him. At the time of the accident, the road was dry and the weather was sunny and clear.

Appellant was charged with vehicular homicide in violation of R.C. 2903.07(A). He waived his right to a jury trial, and the case was tried to the bench. Appellant was convicted and sentenced. This appeal followed.

Appellant presents five assignments of error for review. Appellant's first assignment of error asserts that the trial court erred in entering a verdict of guilty where there was insufficient proof of the cause of Osborne's death. In support of his argument, appellant states that Clinton County Coroner, Cecil W. Hales, M.D., who testified as an expert witness, did not conduct the autopsy of Osborne himself and that the autopsy report was not admitted into evidence.

Appellant's argument rests on the assumption that the only reliable evidence as to the cause of Osborne's death is the autopsy report, which was not admitted into evidence. We disagree.

Evid.R. 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

At trial, Hales testified that when he arrived at the scene of the accident Osborne was already deceased. The car was on its side and Osborne was lying with his head pinned between the car door and the outside. Hales testified that he observed "massive injury to [Osborne's] skull so you could see it through his scalp," that "you could see part of the skull was fractured right there," and that "you could feel the mushiness of the skull itself." He also testified that, in his opinion, the cause of Osborne's death was his head injury.

Frances Osborne, the wife of Ernest Osborne and a front seat passenger in the car, testified that immediately prior to the impact Osborne was alive and not ill or injured. Osborne spoke seconds before the crash occurred, saying, "He's got a stop sign," and then, "What in the world."

In this instance, where the record clearly supports the conclusion that Osborne died from a head injury caused by his collision with appellant's automobile, we find that the coroner's testimony concerning his observations at the scene of the accident are sufficient proof of the cause of death. The first assignment of error is overruled.

In his second assignment of error, appellant states that the trial court erred in denying appellant's motion to compel discovery. The facts underlying appellant's second assignment of error are as follows: At a pretrial hearing, the trial court set November 3, 1995 as the "cut-off date" for discovery, stating that "if there was a problem with discovery, [the court] want[s] to know about it by that date." After filing two requests for discovery, appellant filed a motion to compel discovery on November 6, 1995. The trial court denied the motion on the grounds that it was filed after the cut-off date. Appellant moved the trial court

to reconsider its decision. The trial court denied the motion to reconsider, stating:

"The court has reviewed the tape recording of the pre-trial and finds that there can be no doubt that any problems with discovery were to be brought to the court's attention by the cut-off date for discovery, November 3, 1995.

"* * *

"Further, the court is unclear as to what information defendant seeks from the state. The court is cognizant of the state's open file policy with respect to discovery and absent some proof to the contrary believes defendant has access even, at this late date, to whatever evidence the prosecution possesses."

Appellant now argues that the trial court's denial of his motions necessitates a new trial. We disagree.

■ Even if the state had withheld evidence—an occurrence which has not been demonstrated—the mere failure to disclose evidence does not by itself warrant a new trial; the contested evidence must also be found to be material to the outcome of the trial. *State v. Perry* (1992), 80 Ohio App.3d 78, 85, 608 N.E.2d 846, 850–851. Specifically, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the results of the proceedings would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*, citing *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494.

■ In this case, several factors support the trial court's ruling. First, the state has an open-file policy, allowing appellant access to everything in its file whether or not Crim.R. 16 requires it. There is no evidence that this policy was changed in appellant's case, making it unlikely that any evidence was withheld from him. Second, appellant does not identify which items, if any, he believes the state withheld. Finally, appellant does not demonstrate, or even suggest, any prejudice that he might have suffered as a result of the state's alleged failure to comply with Crim.R. 16. In the absence of any showing of wrongdoing by the state or prejudice to appellant, we cannot say that the trial court abused its discretion in denying appellant's discovery motions. See *id.* The second assignment of error is therefore overruled.

We now turn to appellant's fourth and fifth assignments of error, in which he asserts that the trial court erred by denying his motion for judgment of acquittal pursuant to Crim.R. 29 and that the judgment was against the manifest weight of the evidence.

In sufficiency of the evidence questions, the "relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The reviewing court may not substitute its judgment for that of the trier of fact, as the trier of fact is in the best position to assess the credibility of the witnesses and the weight of the evidence. *Id.* at 279, 574 N.E.2d at 507. The same standard of review governs a motion for judgment of acquittal under Crim.R. 29. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

■ Appellant was convicted of violating R.C. 2903.07(A), which states: "No person while operating a motor vehicle * * * shall negligently cause the death of another." Negligence within the criminal context is defined in R.C. 2901.22(D) as follows:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature."

The standard described in R.C. 2901.22(D) is a higher degree of negligence than ordinary negligence because it requires a *substantial* lack of due care. *State v. Ovens* (1974), 44 Ohio App.2d 428, 430–431, 73 O.O.2d 540, 541–542, 339 N.E.2d 853, 855–856. The determination of whether a lapse of due care is substantial is a question for the trier of fact. *Id.* at 432, 73 O.O.2d at 542–543, 339 N.E.2d at 856; *Middletown v. Campbell* (1990), 69 Ohio App.3d 411, 418, 590 N.E.2d 1301, 1305–1306. "Substantial" is a synonym of "material," which is defined as "being of real importance or great consequence." Webster's Third New International Dictionary (1981 Ed.) 1392, 2280.

Our review of the record before us indicates that there was competent, credible evidence to support a decision by the trial court that all the elements of vehicular homicide were proven beyond a reasonable doubt and that appellant's lapse of due care was "of great consequence." It should have been obvious to appellant that he was approaching an intersection at which he was supposed to stop. Testimony at trial indicated that the road was dry and the weather was sunny and clear. A stop-ahead sign consisting of a bright red octagon situated on a bright yellow diamond beneath a black arrow was visible from appellant's lane of traffic one thousand feet before the intersection. A standard-size red stop sign was located twenty-seven feet before the intersection and a two-foot wide white stop bar was painted on the road just before the intersection. Moreover, there

were other directional road signs that indicated indirectly that, at the very least, an intersection was ahead.

Witnesses also testified that appellant appeared to be traveling at "highway speed" and that he made no attempt to slow down or stop at the intersection. State Trooper Robert L. Matthews testified as an expert witness that appellant was traveling just over thirty-nine miles per hour at the time of the impact and that there was no evidence that he attempted to slow down at the intersection.

■ In light of these facts, we find that appellant's failure to stop at the stop sign was a criminally negligent act and that the trial court did not err by convicting appellant of vehicular homicide. We also find that the trial court correctly overruled appellant's Crim.R. 29 motion because the evidence was sufficient to support the verdict of guilty. Appellant's fourth and fifth assignments of error are overruled.

Finally, we turn to appellant's third assignment of error. Appellant states that the trial court erred in sustaining the state's objection to defense Exhibit No. 17, a newspaper article that contains statements by two individuals who were not called to testify at the trial and by prohibiting defense counsel from using those statements in order to cross-examine an expert witness.

At trial, appellant attempted to cross-examine expert witness Trooper Robert L. Matthews using a newspaper article from the Wilmington News–Journal. The article contains statements by Matthews's post commander and an Ohio State Department of Transportation engineer concerning the safety of the intersection and prior accidents that occurred there. Appellant argues that the newspaper article would have bolstered his argument that his failure to stop at the stop sign was not the "substantial lapse of due care" needed to show criminal negligence.

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The purpose of the rule prohibiting the admission of hearsay is to avoid introducing statements that are unreliable because the out-of-court declarant cannot be cross-examined and the triers of fact are unable to observe the declarant and determine whether his statement was worthy of belief. *Covington v. Sawyer* (1983), 9 Ohio App.3d 40, 43, 9 OBR 43, 45–46, 458 N.E.2d 465, 468–469. Newspaper articles are generally inadmissible as evidence of the facts stated within the article because they are hearsay not within any exception. See Annotation, Admissibility of Newspaper Article as Evidence of the Truth of the Facts Stated Therein (1974), 55 A.L.R.3d 663, Section 2a.

The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Combs* (1991), 62 Ohio St.3d 278, 284, 581 N.E.2d 1071, 1077–1078. A reviewing court will not reverse a trial court on appeal unless the trial court so abused its discretion that there was prejudice to defendant. *State v. Graham* (1979), 58 Ohio St.2d 350, 352, 12 O.O.3d 317, 318, 390 N.E.2d 805, 806–807. An abuse of discretion occurs when a decision is made which is arbitrary, unreasonable or unconscionable. *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719–720. However, if a judicial error occurs, it may be deemed harmless if the reviewing court ascertains that it was harmless beyond a reasonable doubt. *Jenks,* 61 Ohio St.3d at 282–283, 574 N.E.2d at 509–510.

In this instance, appellant sought to cross-examine Matthews on statements allegedly made by out-of-court declarants and then quoted by a newspaper reporter. Under these circumstances, there is nothing to substantiate the trustworthiness of the statements. They are hearsay not within any exception.

Moreover, we have already determined that there was sufficient, probative evidence to support appellant's conviction. Instead of stopping as he was required by law to do, appellant drove through a clearly marked, rural intersection in broad daylight without hesitating. Any testimony concerning prior accidents involving others at the same intersection would not change the critical fact of appellant's criminal negligence in the operation of his own vehicle at the time of the accident. Therefore, even if the trial court committed error in excluding the evidence, it was harmless beyond a reasonable doubt. Appellant's third assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG and POWELL, JJ., concur.