JOURNAL ENTRY AND OPINION
This appeal is brought by Robert Cooper, Executor of the Estate of Louis Flaugh, on behalf of the defendant-appellant Louis Flaugh, deceased. The appellant was convicted of vehicular homicide in violation of R.C. 2903.07. The court imposed a sentence of 180 days incarceration, suspended; probation for two years; a $1000.00 fine; and a three-year suspension of his driver's license.
On August 14, 1997, while driving his Jeep Cherokee, Mr. Flaugh, then age 89, struck a motor vehicle driven by Edward Ptak. Mr. Ptak's wife, Rose Ptak, was seated in the front passenger seat. Mr. Ptak was proceeding north on West 130th
Street and was under a green light at the intersection of West 130th and Pleasant Valley Road. Mr. Flaugh was headed in a southerly direction on West 130th Street, but was in the center turning lane. The appellant attempted to make a left turn in front of oncoming traffic. In the midst of this turn, the vehicles collided, Mr. Flaugh was cited for failure to yield the right of way. Both vehicles were so damaged that they required towing from the scene. Mr. and Mrs. Ptak went to Southwest General Hospital by way of separate ambulances and Mr. Flaugh was taken to Parma Community Hospital. Approximately two weeks later, Mrs. Ptak died as a result of injuries sustained in the accident.
At trial, Mr. Ptak testified that he did not see the appellant until the collision occurred (T. 7). After the impact, the cars were still together (T. 10). Parma Police Officer Michael Tellings investigated this accident. When the accident happened in the City of Parma it was sunny, clear, dry, and in the sunlit hours of the early evening during the summer. West 130th Street has five lanes, two in each direction and one center turning lane. There was no construction or other obstacles in the area or near the intersection. When Officer Tellings arrived on the scene, the appellant and the Ptaks were seated in their respective vehicles. Officer Tellings proceeded to check for injuries and gather the facts of the accident.
At the point in the testimony where the officer stated that he spoke with the appellant and inquired as to what had happened, counsel for the appellant objected, stating that despite a motion for discovery requesting any statements of the appellant or witnesses[1], no written statements were produced by the prosecution (T. 22). As the judge stated, in essence, since no copy of the appellant's statement was given to his defense counsel, there had been no compliance with discovery (T. 22). The prosecutor responded that the accident report indicates that the officer spoke to both drivers and, additionally, that there was no written statement given. The appellant's counsel argued that 4there was nothing in the accident report to indicate that a statement had been given. The accident report was exchanged as a part of discovery (T. 23). The court declined to exclude the statement for failure of discovery (T. 23). Defense counsel then objected to the statement on the grounds of hearsay. The court determined that the statement would potentially constitute a statement against interest or an excited utterance (T. 24). After this discussion, the testimony of Officer Tellings continued.
The prosecution inquired of Officer Tellings as to whether he had a conversation with the appellant after the accident. Officer Tellings testified that the appellant stated: "`I was turning left and I thought I could make it.' That was his exact words." (T. 24). Officer Tellings further stated that he spoke with other people on the scene and that based on the totality of the information he received, it was clear that the appellant was at fault (T. 25)
On cross-examination, Officer Tellings testified that he learned from those on the scene that the appellant was in the left-turn lane waiting for a chance to turn. And that at least at one time, the appellant was stopped in the turning lane (T. 31). No photographs were taken because, in the officer's assessment, it was a minor accident. The visible injuries to all concerned were minor (T. 32). As to the issue of speed at the time of the accident, the officer stated that the estimate of appellant's speed, 25 m.p.h., resulted from his conversation with the appellant. Officer Tellings acknowledged that the police report does not reflect that any statement was taken from either driver (T. 33). There were no witnesses other than the drivers (T. 34).
The appellant's first assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN, IN A PROSECUTION FOR VEHICULAR HOMICIDE, IT ADMITTED INTO EVIDENCE AN ALLEGED ORAL STATEMENT BY THE DEFENDANT TO A POLICE OFFICER, TO WIT: "I WAS TURNING LEFT AND I THOUGHT I COULD MAKE IT," THAT WAS NOT REVEALED IN THE OH-1 TRAFFIC ACCIDENT REPORT NOR PROVIDED BY THE PROSECUTOR DURING DISCOVERY, IN VIOLATION OF CRIM.R. 16, AND THAT WAS SIGNIFICANT TO THE TRIER OF FACT AND SERIOUSLY PREJUDICED THE DEFENDANT AND COUNSEL IN THEIR PREPARATION FOR TRIAL.
The appellant argues that the trial court erred in admitting into evidence the oral statement the appellant made at the scene of the accident. The appellant states that the prosecution was mandatorily required to disclose the statement during discovery under Crim.R. 16(B) (1) (a) (ii) and that the failure to do so inured to the appellant's prejudice. The thrust of the appellant's argument is that absent this statement, the prosecution presented insufficient evidence upon which to base a conviction.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins,supra, citing to Tibbs v. Florida (1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
The elements of vehicular homicide are set forth in R.C.2903.07, which states in pertinent part:
 (A) No person, while operating or participating in the operation of a motor vehicle, . . ., shall negligently cause the death of another or the unlawful termination of another's pregnancy.
The legislature defined criminal negligence in R.C. 2901.22(D) as follows:
 (D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.
In the oft cited State v. Ovens (1974). 44 Ohio App.2d 428, the court noted that the term "substantial" is a relative, inexact term, which escapes precise definition. The word had "been said to be as elusive a word as the English language contains" and is susceptible of various meanings depending on the circumstances.Id. at 431. The court in In re Vermaaten (1996), 116 Ohio App.3d 639, cited to Ovens, but noted that the negligence standard required to sustain a criminal conviction contemplates a higher degree of fault than does the standard to sustain an award of civil damages. Of even greater significance, criminal law requires a higher degree of proof to sustain a conviction. Id. at 642.
This court finds the issues before the Vermaaten Court to be very similar to those before us now. Vermaaten involved a teenager who struck a stationary stump grinder attached to a vehicle. In reversing the conviction, the court stated that there was no allegation of recklessness, no suggestion of driving under the influence of alcohol or other drugs, or that there was excess speed. In Vermaaten, the prosecutor believed that the defendant had fallen asleep at the wheel, but offered no proof save that the driver had little sleep the night before the accident. The court found this lack of proof required a reversal of the conviction.
Likewise, in the case sub judice, there is no allegation of recklessness, no suggestion of driving under the influence of alcohol or other drugs, and no concrete evidence of the appellant's speed. The prosecution seems to argue that the appellant exercised a substantial lack of due care based upon the appellant's statement that he perceived the oncoming vehicle, but believed he could make the turn safely. This statement by the appellant, in and of itself, is merely an acknowledgment of an error in judgment. This acknowledgment, without more, does not rise to the level of a substantial lack of due care required for a conviction for vehicular homicide.
The appellant's first assignment of error is well taken.
The second assignment of error is moot pursuant to App.R. 12.
Judgment reversed and the appellant's conviction is vacated.
This cause is reversed.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
JAMES W. PORTER, J., and ANN DYKE, J. CONCUR.
 ___________________________________ JAMES D. SWEENY JUDGE
[1] Appellant's counsel stated on the record that the request for discovery had been made. The prosecution did not refute this assertion. However, the docket and the record before this court do not reflect that any such motion was filed.